Good morning, may it please the court. My name is William Ginego and I represent the appellant in this matter, Robert Gordon. I'd like to reserve two minutes of my time for rebuttal. Keep an eye on the clock. This is an appeal from a $27 million restitution order. $17 million of that is not in dispute. The remaining $9.5 million involves three disputed items of restitution. Before I actually get into the issues that are raised in the brief, I wanted to advise the court that I filed yesterday and served on counsel an argument or a request to brief the question of whether Blakely applies here. I don't think the panel needs to reach Blakely if it resolves the matters in our favor as to the issues raised in the brief. If it does not agree with our arguments in the brief, then I do think it would need to go on to reach the Blakely issue, and I just wanted to preface that. Neither Mr. Callaway or myself intend to argue Blakely today, but I just wanted to make sure the court had received that motion. The first issue, the government contends that Mr. Gordon waived his right to appeal the restitution order. Mr. Gordon had the right to appeal the conviction, he had the right to appeal the sentence, and he had the right to appeal the restitution order. He gave up his right to appeal the sentence and he gave up his right to appeal the conviction, and both of those items are listed in the appeal waiver. There's no mention anywhere either in the written appeal waiver about restitution, and there was never any reference to it in the plea colloquy. In the district court, the government relied on the first sentence of the plea waiver, of the appeal waiver, to argue that he waived his right to restitution. It gave up that argument in the motion before this court. It relied on the second sentence. In its appellate brief to this court, the government doesn't rely on the written waiver at all. What it relies on is the plea colloquy. But even as to that waiver, if you look at page 255 of the excerpt of the record, Judge Fogel said to Mr. Gordon, under the plea agreement, you are giving up your right to appeal your conviction, sentence, judgment, and orders of the court. So he specifically references the plea agreement, never mentions restitution. The government drafted the plea agreement. They could have easily cured this problem by putting in restitution. They didn't do that. Moving on to the second item. They could have easily cured the problem by reserving the right to appeal as you reserve the right to appeal one piece of the sentence. Judge Clifton, I believe that as the drafter of the plea agreement, the government has the obligation to include it. I understand that argument. But I also understand that to the extent there's a lack of clarity, the document was, I presume, negotiated by both sides. It was, but I don't think there was ever any intent on our part to give up the right to – we were not giving up the right to appeal the restitution. And I suppose you're right that we could have negotiated that. But I suppose that that would have then put us in the position where the government would have said, well, we want you to waive that also. And I certainly wasn't going to raise something that they were not making me waive so that they would then turn around and say, okay, now we want you to waive that right as well. And so it just never came up, and it wasn't – the standard is Mr. Gordon has to have a knowing and a voluntary waiver of the right to appeal the restitution order. That's not in the record. And it could have been, is my point. And I think that the case law stands for the proposition that unless the government makes it clear as to transfer and unless there's a knowing and a voluntary waiver, that Mr. Gordon is allowed to appeal that. Moving on to the first item of restitution, which is the Tarion shares. The district court judge used the wrong measure of restitution, I think, is what the fundamental problem is. The statute says under 3663A that the measure of restitution that the court has used is the value of the property. And what Judge Fogel used instead, if you look at page 171 of the excerpt of record, Judge Fogel says the measure of restitution is the lost opportunity to sell the shares at a higher price. And then what he says is that – he stressed that what he wanted – what he was trying to accomplish was to essentially make the victim whole. That's correct, Your Honor. Now, that doesn't mean that they were going to sell the stock on the date that it was allegedly – that it was taken by Mr. Gordon. And I think that the court is right. I think that that's what Judge Fogel had in mind, and I think that there was a lot of – What's wrong with that? Isn't that consistent with the statutory purposes of restitution? No, I don't believe that it is. What the statute says is that we have a formula for determining what the restitution is. And it's not make the victim whole, and it's not how much was the loss as a sentence of guidelines is. It is you look to the statute. The cases are very clear that you only have a right to restitution as is established by the statute. And so you don't start off with the question is how much was the loss. You start off with what is the measure of restitution. And if you start off with that question, you go to the statute. And what the statute says is in the case of an offense resulting in damage to or loss or destruction of property or victim of the offense, you go to – and then it says the greater of the value of the property. And it's not the greatest loss or it's not make the victim whole. It's the value of the property. And what Judge Fogel then did was by using the wrong measure of restitution, by saying what's the lost opportunity to sell it here, he then used the wrong date evaluation because the statute says the date evaluation is the date of the loss. What's the date of the loss? The date of the loss as with every one of the assets that were taken and with all the other equities that were taken, the date of the loss is the date of the taking. And, in fact, does it have to be? I think in a case where the victim doesn't know that something's been taken as of that time, isn't aware of the loss, doesn't become aware of the loss until sometime later. So he's not in a position to act in a way to cover the situation, can't acquire the shares in question for the future, for example, just doesn't know until later. And I think that is exactly what Sysco argued here and that's what the government would argue. And it doesn't matter, Judge Clipson, because the statute says it's got to be one of two dates, whichever is either the date of sentencing or the date of loss, damage, or destruction of the property. What's the date of the loss? I mean, that's really the question. Does it have to be the date of taking if the victim doesn't know the loss has occurred? Yes, it does. Because when you use the measure of restitution, which is the value of the property, then you go back to the date that the property was lost, the date that it was taken. That is what we use in every other item of restitution here. All the other stocks that Mr. Gordon took, they didn't know he took those stocks, and yet we use that same measure of restitution. United States v. Rice, which is the only case the government relies on, actually used the date of taking. And the government uses the date of taking. I'm not saying the date of taking can't be a date of loss. What tells us that's the only date that can be the date of loss? Well, I think the statute says the – I understand that the date of the loss might be construed differently, and I think the way Judge Fogle got there erroneously was he used the wrong measure of restitution. He says in his order, by using this measure of restitution, the lost opportunity, the date of the loss then becomes the date that they lost the opportunity to sell it. I submit that based on the statute, when you say the value of the property, it is the day that it was taken, because otherwise you're going to have speculative dates. People are going to say, well, I didn't find out about it for two weeks. And you're going to end up with exactly the situation here. We're going to have these complicated restitution hearings that are really not suited for this kind of forum. Cisco certainly has the right to go after these additional damages at another time. But in the context of restitution statute, the statute makes it very clear the formula is supposed to be used, and there's a number of good reasons for that, and one of them is so you can figure everything out. We settled $17 million worth of the restitution here very easily by following exactly what the statute says. And that's what they did in Rice, and that's what they do in these other cases, is they figure out when the day of the loss occurred. 95 percent of civil lawsuits get settled, but we have trials for the rest. You settled most of it but didn't resolve all of it. I mean, again, I see the statute. The statute speaks of date of loss, and I still haven't heard why there's only one possible date of loss, why the district judge doesn't have the discretion to adopt other dates for date of loss. I think that when you use the statute says you've got to use the value of the property, and then the question is, what does that mean? When was the property lost? The property wasn't lost when they lost the opportunity to sell it, and I think just the common definition of the word, the date that the property was lost was the day Mr. Gordon took it. That's when they didn't have it. It doesn't say when they discovered the loss or when they find out about the loss or when they could have mitigated damages. It says the day of the loss, and the property was lost in a straightforward, I think sort of straightforward definitional way. It was lost the day that he took it, the day that he took the certificates. And that's one of the two dates that Congress decided to use. And admittedly, in civil cases, there are a lot of other things going on, but this is supposed to be a simple, straightforward proceeding that can be taken care of easily. We didn't have discovery. We didn't have an opportunity to issue subpoenas. None of those things were available to us. They can still go after them in the civil case, but this is supposed to be something that's simple and straightforward. You want to save the balance of your time for rebuttal? Yes. Thank you, Mr. Janenko. Good morning, and may it please the Court. My name is Dave Calloway. I'm an assistant United States attorney representing the government's interest in this case. And with the Court's indulgence, I'd like to start where Mr. Janenko finished speaking about the Tarion loss. And the government would agree with the Court's sentiment that this – that the statutory purpose of the Mandatory Victim Restitution Act is to make the victim whole. Well, that's a sentiment expressed by somebody on the Court anyway. Whether it's the Court's sentiment is another question. Very well, Your Honor. Let me put it this way. It seems to me that your approach says that if somebody steals one of my six diamonds, then I get to look to some kind of uncoet date later, after the taking. But if he steals them all, there's a difference. Or maybe vice versa. I don't quite understand why when somebody steals my diamond or my share of stock or my car, the date that I lost it isn't the date that the person stole it, whether I know about it or not, and whether I sell my other stock later or not. So maybe you can explain the theory that the principle is going to be, if it's not just catch-as-catch-can, whatever a district judge decides on, as counsel says, without any discovery, et cetera. What is the principle on how we distinguish what the date of loss is? Your Honor, the principle the government would submit begins with the objective of the Mandatory Victim Restitution Act of making the victim whole. So in order to determine what the loss is, the Congress could have stopped and said, what we want you to do is apply the normal rules of making victims whole. It did not stop. It got very specific. And another part of its theory was it didn't want big, complex, long civil trials. Because if it's just make the victim whole, I don't see why the defendant's not entitled to a civil trial with civil discovery to decide what it means to make the victim whole, just like it means in a civil case. So the question, it's not quite so simple just to say, well, the purpose was to make victims whole. I know that. Your Honor, I think Congress also would have been perfectly capable of determining that loss equals taking and stated that the date of loss is the date of taking. And Congress did not do that. So I would submit that when Congress said the date of loss, damage or destruction, as they did in the statute, that that gave the courts some latitude in determining when loss occurred. And I think that the Rice case is indicative of that concept. In the Rice case, the fasteners were stolen on a specific date. They had not, by definition, been sold. But the Court did not just give the restitution for the wholesale value of the fasteners sitting in the warehouse. It gave restitution for a book value, which assumed a profit margin built in on the principle that the fasteners would have been sold. And in fact, in that case, the Court went further and gave restitution for all the fasteners, because of the defendant's misconduct, Grumman was not in a position to know whether the – which fasteners were suspect and which fasteners were okay, and as a result gave restitution for all of them. I think that's an example of a flexible application of the Mandatory Victim Restitution Act. But that's not picking a factor, as you did in this case, or as the Court did in this case, that, well, it all depends. If they sold the stock, it's one thing. If they didn't sell the stock, it's something else. Now, suppose they hadn't sold the rest of their Tarion stock. Then your position would be? Our position would be, consistent with the remainder of the equities, that it would have, at that point, been speculative to try to say that Cisco might have sold some percentage of its Tarion shares. But because Tarion – Well, but maybe if Cisco had 16,000 more shares, it would have sold 16,000. And that's certainly true, but I think we would have been in a much more speculative position than we are here. If Cisco had 100,000 shares, and this guy peculated 50,000, and then Cisco sold 48,000 shares, retaining 2,000 of them, then you'd say, well, it's the day he took it. That's what's important still. Because it would be speculative to decide they would have sold the other 50,000. Is that correct? We – in that situation, Your Honor, I think that we probably would argue, and I think be entitled to argue under the statute, that if you could prove, as we did in this case, that Cisco had a liquidation program that was designed to take it down to 2,000 shares, consistent with what happened here in the so-called dry powder position that Cisco retained at the end, then I think we actually would have been in a position to make the same argument. But what made the Tarion equities different was that we were able to establish, beyond any doubt, that Cisco would have liquidated all of these shares if it had not – if they had not been sitting in unknown to Cisco in Mr. Gordon's own brokerage account. But you didn't have to make that showing for other stocks. So I think it was Broadcom, the value actually went down after he took it, and as part of the agreement, he paid some additional funds to reflect the reduction in value. Cisco gets the full value as the date of the taking, even though there's no evidence, and indeed it's plainly not the case, that it was Cisco's plan to sell the stock on that day. I mean, isn't there something inconsistent about picking and choosing amongst the different items of property whether or not you go by the date of taking automatically or whether you look to the date that Cisco would have sold? Because in the case of Broadcom, there's no evidence they would have sold on the date that they got reimbursed, or the date as of which they got reimbursed. That's correct, Your Honor, although the Broadcom resolution was by agreement of the parties. Well, I understand that. But that's – as Mr. Ginecco has argued, that's the approach that was taken for the others. That's using the date of physical taking as the date that Cisco didn't have control anymore. That's sort of the default situation or case. And I can – I certainly do understand the argument that Cisco somehow lost more than that, but Cisco's got civil remedies available to it as well. Is there anything that suggests that the statute which speaks of the property singular is meant to allow the victim to pick and choose amongst the items of property what the date of loss will be? I have not seen a case, Your Honor, that specifically addresses that point. I think that you – we did analyze it and the Court did analyze it property by property. And in the case of properties where Cisco still maintained a portfolio at the time that Mr. Gordon's embezzlements were discovered, then we went with the greater of either the date he took them or the date at the time of sentencing. In every case, the date of taking was higher. Tarion, we would submit, was unique because it was a stock that Cisco had completely  And it simply would not make Cisco whole to say to them, well, lucky for – lucky for Mr. Gordon, he took them here on a date when the price was still relatively low, and when Cisco began its liquidation program, it didn't sell these shares because it didn't know that it didn't have them. And essentially, tough luck for Cisco, but have a good time in the civil case, you know, spend hundreds of thousands of dollars and try to get the remainder in a civil judgment. One spends hundreds of thousands of dollars in the civil case because one has to come in and prove in great detail what factors influenced and were you really damaged by this act or were you not damaged by this act. But that's the point. If they get to – if you're going to have that kind of argument in these cases, you know, were they damaged, what influence, et cetera, et cetera, et cetera, then these can become $100,000 civil cases. And I don't see why they wouldn't. Your Honor, in this case, there was a very thorough evidentiary hearing, as there sometimes are in criminal restitution cases. Let me ask you another question. Interest. Do you have a case where interest was allowed, a situation where the asset involved was not essentially an interest-bearing asset or an interest-bearing concept? Let me be a little bit specific because there's not much time. Lots of cases on loan fraud, cases on stealing CDs. We have a case now on child support, which by law bears interest when it's not paid on time. Do you have any case that doesn't have a legal or natural interest-bearing situation where interest is allowed? No, Your Honor. If I did, I would have cited it. I just wanted to make sure. Okay. Okay. So what's the justification for awarding – for the district court's award of prejudgment interest? Because Judge Fogle made a finding, Your Honor, that the equities had a cash value on the date of the loss, and if something has a cash value, prejudgment interest can be awarded consistent with the case. It may have had a cash value, but they weren't investing that cash value in, you know, an interest-bearing account. That's correct. They were not. They were – well, actually, they were liquidating their portfolio, and at that point converting those equities into cash, and Judge Fogle used the date of – he used the same averaging technique to establish the date of the loss. Did he apply the prejudgment interest award to all securities that were taken? Yes, he did. So for the ones that weren't liquidated and where the date of taking was used to calculate, was there an award for prejudgment interest from that date of taking? I believe that's correct, Your Honor. But in this case, as for those shares, because, I mean, the statute would have provided for use of value at the date of – was it sentencing? If the value had, in fact, gone up, what happened is the value went down. So Cisco really gets the benefit of a forced liquidation, thereby saving it from the loss, plus interest from a sale they never would have made on their own if left to their own devices. Isn't there something a little inconsistent with that? Since there is no indication, indeed, it's plainly not the case, that they were going to liquidate and convert to cash as of that point. I would just submit, Your Honor, that in the criminal restitution case, Mr. Gordon dealt the hand and put himself in that position. Okay. Thank you. Thank you very much. Did either Mr. Callaway nor myself address the investigative process? I don't think that would be proper rebuttal, so I don't want to address that now because he wouldn't have a chance to address it. And I believe the Court is aware of the recent case that involves the Child Support Recovery Act, which really, I think, does answer the question here, because they wouldn't have had to write this opinion if the government's theory was right, that you automatically get interest. Is the civil action still pending? It is still pending in front of Judge Fogle. That's correct. What stage is it at? I believe there's a stay in effect until this matter is resolved. And it will remain in effect until then. Thank you. Thank you very much. Thank you for the arguments. The matter will stand submitted. Thank you. The next case on the argument calendar is United States v. Nunez-Rodillo. Is that right?
judges: Fernandez, Paez, Clifton